# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **WILLIAM JEWETT, JR.** | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-11849-GAO** |
| | ) | |
| **BERNARD BRADY** | ) | |
| **Respondent.** | ) | |

_____)

### RESPONDENT'S MEMORANDUM OF LAW
### IN OPPOSITION TO THE PETITION FOR A WRIT OF HABEAS CORPUS

A Massachusetts jury convicted William Jewett, Jr. (the "petitioner") of murder in the first degree on a theory of deliberate premeditation and rape.  After unsuccessfully pursuing a motion for a new trial and an appeal in the Massachusetts state courts, the petitioner filed a second motion for a new trial that also was unsuccessful.  By this habeas action, the petitioner contends that his convictions should be set aside for six reasons.

As detailed below, habeas relief should be denied for the following reasons:

- Petitioner has procedurally defaulted on grounds one and three, relating to the sperm evidence presented to the grand jury and at trial, by failing to raise these claims at the earliest possible opportunity.  *See* pp. 8-11.

- Petitioner cannot excuse his default on grounds one and three by relying on the ineffective assistance of counsel claim presented in ground two because the Massachusetts Supreme Judicial Court's ("SJC") adjudication of his ineffective assistance of counsel claim on the merits resulted in a decision that was neither contrary to, nor involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United       States.  *See* pp. 11-12.

- Petitioner has abandoned ground four by not briefing it on the merits.  In any event, this state law claim provides no basis for habeas relief.  *See* pp. 12-16.

- Petitioner has procedurally defaulted on grounds five and six, relating to appellate counsel's alleged ineffective assistance in failing to raise certain claims on appeal, because the SJC "gatekeeper" justice determined that the claims were not "new" and "substantial" within the meaning of M.G.L. c. 278, § 33E.  *See* pp. 16-20.

## PRIOR PROCEEDINGS

### A.    The State Court Proceedings.

The petitioner was indicted by a Plymouth County grand jury on charges of first degree murder and rape.  *See* Respondent's Supplemental Answer, [hereinafter cited as "Supp. Ans., Ex.___"] Exhibit 1, Docket Entries, *Commonwealth v. Jewett*, PLCR1997-99983.  After a jury trial before Massachusetts Associate Justice Suzanne Delvecchio, the petitioner was convicted of both charges.  *Id.*    The petitioner timely filed a notice of appeal to the Massachusetts Supreme Judicial Court ("SJC").  *Id.*  On May 22, 2003, the petitioner filed a motion for a new trial in the SJC.  *See* Supp. Ans., Ex. 7, Docket Sheets, *Commonwealth v. Jewett*, No. SJC-08235.

The petitioner raised the following claims in his motion for a new trial: 1) the defense counsel's unreasonable failure to investigate and use available facts deprived him of an otherwise available ground of defense; 2) the prosecutor allowed misleading and deceptive testimony to be presented to the jury regarding the age of the sperm; 3) the prosecutor failed to disclose exculpatory evidence that might have affected the outcome of the trial; 4) the prosecutor's failure to disclose exculpatory evidence violated due process under the 5th and 14th Amendments; 5) the grand jury proceedings were materially impaired by a government witness who misrepresented evidence and by a government witness who recanted his testimony after the indictment; and 6) the failure of the government to disclose all promises, rewards, and inducements made to a key trial witness violated the petitioner's right to a fair trial.  *See* Supp. Ans., Ex. 4, Defendant-Appellant's Record Index on Appeal, *Commonwealth v. Jewett*, No. SJC-08235.  The SJC stayed the appellate proceedings on the day the motion for a new trial was filed, remanding the case to Plymouth Superior Court to decide the petitioner's motion and

consolidating the appeal, if any, with the direct appeal. *See* Supp. Ans., Ex. 1 and Ex. 7. On September 18, 2003, Massachusetts Superior Court Associate Justice Linda Giles denied the motion for a new trial. *See* Supp. Ans., Ex. 1. The petitioner filed a notice of appeal from the denial of the motion for a new trial. *Id.* All correspondence related to the motion for a new trial was sent to the SJC to be consolidated with the direct appeal. *Id.*

In his consolidated appeal to the SJC, the petitioner raised the following claims: 1) his right to due process was violated when the government argued at trial that the sperm was deposited just before the victim's death when it allegedly had reports showing that it was old at the time of her death; 2) he received ineffective assistance of counsel due to his attorney's failure to investigate or use information allegedly showing that the sperm was old; 3) he was deprived of his constitutional right to a fair grand jury procedure when a police officer misled the grand jury by allegedly falsely testifying regarding the age of the sperm; 4) a new trial should be awarded because there was a substantial likelihood of a miscarriage of justice based on various factors, including: improper expert opinion of sexual assault; improper admission of prejudicial statements made by the [petitioner]; and the inherent weakness of the jailhouse confession; and 5) the motion judge abused her discretion by denying the motion for a new trial without a hearing when the motion raised substantial issues supported by a threshold factual showing. *See* Supp. Ans., Ex. 3, Defendant-Appellant's Brief on Appeal, *Commonwealth v. Jewett*, No. SJC-08235. The SJC affirmed both the petitioner's convictions and the order denying the motion for a new trial. *See* Supp. Ans., Ex. 6, *Commonwealth v. Jewett,* 442 Mass. 356, 813 N.E.2d 452 (2004).

The petitioner also filed a request for rehearing on the issue of the expert opinion of the

sexual assault and ineffective assistance of counsel for failing to object to the expert opinion on the sexual assault. *See* Supp. Ans. II, Ex. 11. The petition for rehearing also set forth that because no ineffective assistance of counsel claim was raised on direct review, the failure to raise the issue on appeal may be ineffective assistance of appellate counsel. *Id*. The SJC denied the petition for rehearing. *See* Supp. Ans. II, Ex. 7.

On June 5, 2006, the petitioner filed a second, *pro se* motion for a new trial in Plymouth Superior Court alleging (1) ineffective assistance of appellate counsel; (2) a violation of his Sixth Amendment right to an impartial jury when a particular juror expressed bias; and (3) the trial judge abused her discretion by failing to hold a proper voir dire or dismiss the juror for cause "to purge the taint of the Sixth and Fourteenth Amendment violations." *See* Supp. Ans. II, Ex. 11 at p.5. Judge Delvecchio denied the second, *pro se* motion for a new trial. *See* Supp. Ans. II, Ex. 9. Pursuant to M.G.L. c. 278, § 33E, the petitioner filed an application for leave to appeal with the single justice of the SJC that was denied. *See* Supp. Ans. II, Ex.11 and 12.

### B.    The Federal Habeas Proceedings.

On September 6, 2005, the petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting the following claims: 1) the prosecution violated his due process rights by presenting evidence it knew to be false; 2) the failure of his trial lawyer to investigate or utilize exculpatory evidence constituted ineffective assistance of counsel; 3) the police misled the grand jury by testifying falsely; 4) there was a miscarriage of justice caused by various factors, including the improper admission of expert opinion on sexual assault; 5) the failure to raise the issue of alleged jury misconduct constituted ineffective assistance of appellate counsel; and 6) the failure to raise the issue that the trial counsel's lack of objection to the

admission of expert opinion on sexual assault was ineffective assistance of trial counsel

constituted ineffective assistance of appellate counsel. *See* Petition at ¶12-13. The respondent

filed a motion to dismiss the petition as unexhausted, along with a memorandum of law in

support thereof. *See* Docket at 8 and 9. The petitioner filed a motion to stay that the respondent

opposed, but this Court allowed on June 5, 2006. *See* Docket at 17, 18, and 19.   This Court also

denied the respondent's motion to dismiss. *See* Docket at 1/8/07. On December 21, 2007, the

petitioner filed a memorandum of law in support of his petition for habeas relief. The respondent

hereby submits this memorandum of law in opposition to the petition for a writ of habeas corpus.

## STATEMENT OF THE FACTS

"A 'determination of a factual issue made by a State court shall be presumed to be

correct. The applicant shall have the burden of rebutting the presumption of correctness by clear

and convincing evidence.'" *Norton v. Spencer*, 351 F.3d 1, 6 (1st Cir. 2003), *cert denied*, 542

U.S. 933 (2004)(quoting 28 U.S.C. § 2254 (e)(1)). "'The presumption of correctness is equally

applicable when a state appellate court, as opposed to a state trial court, makes the finding of

fact.'" *Id*., (quoting *Sumner v. Mata*, 455 U.S. 591, 593 (1982)). The SJC set forth the following

facts:

> The [petitioner] and the victim had known each other socially for a
> number of years, but had never been romantically involved. On the
> evening of January 29, 1993, they both attended a party at a mutual
> friend's apartment in Weymouth. Sometime before 1 A.M. on January
> 30, 1993, as the last guests were leaving the  party, the [petitioner] said he
> would drive the victim home. The [petitioner]'s automobile, which
> was seventeen years old and unregistered, would not start, so a friend
> in a truck used jumper cables to start it. The automobile was running very
> noisily and backfiring, so the friend followed it for a short distance in his
>
> truck.  The two vehicles parted ways in a parking lot after the [petitioner]
> said the automobile was fine.

The victim had a 12:30 A.M. curfew.  When she failed to arrive home by 1 A.M.,  her mother telephoned the apartment where the party had been held.  By morning, both of the victim's parents and some of her friends began looking for her in the   neighborhood.  After learning that the victim had left the party with the [petitioner], the victim's father telephoned him.  The [petitioner] told him that he had dropped the victim off at the end of her street at about 12:30 A.M., because she wanted to finish her beer before going home.

Later that afternoon, while investigating what looked like a blue rag on his property, a resident of Turner Road in Rockland discovered the victim's body lying partially covered by pine needles, twigs, and leaves in a wooded area.  He telephoned the police.  Dr. James Weiner, a State medical examiner, declared the victim dead at the scene and conducted a preliminary examination of the body.    His examination revealed that the victim's lipstick was not smeared, but her blouse was pulled off her left shoulder, and two buttons in the middle of the blouse had been torn off.  Her pants were buttoned, but the zipper was open and broken.  One leg of her pantyhose had been torn completely off, and one of her boots was missing.  Her underwear and pantyhose were rolled up, and she appeared to have been redressed.

The victim's body was transported to the medical examiner's office for further investigation and autopsy.  Dr. Weiner determined that the victim had died around 1:30 A.M., and had probably been moved to the Turner Road location after her death.  He prepared a rape kit, collecting semen from the victim's underwear and vagina, and sent the kit to the State laboratory for analysis.  The following morning, Dr. William Zane, another State medical examiner, performed an autopsy.  He observed scrapes, abrasions, and bruising to the victim's face and neck, as well as hemorrhages on the surface of her face and around her heart and upper airway.  From this evidence he determined that the victim had died as a result of asphyxia from strangulation, caused by either a soft ligature, fingers, or a forearm.

The DNA analysis of the semen recovered from the victim's underwear revealed a high probability that it had come from the [petitioner].  Analysis of the semen recovered from the victim's vagina was inconclusive, but the [petitioner] could not be excluded as the source of the semen.  A green thread found in the [petitioner]'s  automobile matched the victim's blouse.  The victim's missing boot was found in the middle of a street in Weymouth, about three-tenths of one mile from the [petitioner]'s house.

At trial, three residents of Turner Road, where the victim's body was discovered, testified to seeing an automobile identical to the [petitioner]'s, with a single male occupant, traveling very slowly down Turner Road between 2 A.M. and 3 A.M.   Two other neighbors heard the sound of an automobile backfiring around the same time.  Police later discovered that one of the [petitioner]'s close childhood friends lived on Turner Road.

Several of the [petitioner]'s friends testified regarding his statements and demeanor on the morning of January 30, 1993.  Two friends testified that the [petitioner] told them that the victim's father had telephoned him to say that the victim was missing.  The [petitioner] also told one of these friends that he did not want to get into trouble because his automobile was unregistered and uninsured, and told two friends that he hoped nothing had happened because he did not have an alibi.  Friends who saw the [petitioner] that day and the following testified that he was  "[n]ervous," "pacing," and "agitated."   The [petitioner] denied to his friends and the police that he had ever had sexual intercourse with the victim, even after the DNA match was later revealed in the newspapers.

Four years later, after the [petitioner] had been indicted for the victim's rape and murder and incarcerated pending trial, he confessed to another inmate, Mark Obershaw, that he and the victim had kissed in his automobile and were planning to have intercourse, but that she refused at the last minute.  He told Obershaw that  he had sexual intercourse with her anyway, and that when he finished, the victim started yelling that he had raped her and that she was going to tell her father.  The [petitioner] first told Obershaw that he had accidentally strangled the victim, but later told him that he "had to" strangle her so that he would not be charged with rape.  He then "got emotional" and put the body in the trunk and drove to a street where "one of his best friends lived" because "[h]e knew a spot where he could put the body."   He told Obershaw that he drove slowly down the street because his automobile had a loud muffler, backed up to a spot near the woods, and covered the body with pine needles and brush.

The [petitioner] did not testify at trial.  His attorney argued that the victim's death  was accidental, caused by "positional asphyxiation" (FN1)[1] during consensual intercourse with the [petitioner].  He also argued that, after the victim died, the [petitioner] tried to dispose of the body in a

---

[1] In footnote one, the SJC stated, "Positional asphyxia results when a person's body is put in a position which prevents the person from being able to breathe."

panic.

*See* Supp. Ans., Ex. 6, *Commonwealth v. Jewett,* 442 Mass. at 357-360, 813 N.E.2d at 455-457.

The SJC also set forth the following concerning the age of the sperm:

> As noted above, around 11 P.M. on January 30, 1993, Dr. Weiner recovered semen
> samples from the victim's underwear and from inside her vagina and sent  the samples to
> the State laboratory for analysis.  There they were examined by Mary McGilvrey, a
> chemist employed by the Commonwealth, who testified that none of the sperm cells in
> the two samples she examined "had tails."   She explained that an intact sperm cell
> consists of a head, neck, and tail, and that the tails are quite fragile, the first part of
> the sperm cell to degrade after it is deposited in the vagina.  She testified further that the
> presence of intact tails indicates that  the sperm was deposited "more recently as
> opposed to a longer period of time," but that if no tails are present, she is unable to draw
> any conclusion about the age  time, sperm tails can be shed by certain extraction
> techniques, such as the process used to recover the sperm cells from the victim's
> underwear.

*See* Supp. Ans., Ex. 6, *Commonwealth v. Jewett,* 442 Mass. at 360-361, 813 N.E.2d at 457-458.

## I.     **Habeas Relief Is Not Available On Grounds One, Two or Three of the Petition.**

As detailed below, grounds one and three of the petition are barred by the procedural

default rule and ground two fails to establish cause and prejudice sufficient to excuse this default.

"The habeas corpus anodyne is designed neither to provide an additional layer of conventional

appellate review nor to correct garden-variety errors, whether of fact or law, that may stain the

record of a state criminal trial.  Rather, the remedy is limited to the consideration of federal

constitutional claims."  *Burks v. DuBois*, 55 F.3d 712, 715 (1st Cir. 1995).  *See Herrera v.*

*Collins*, 506 U. S. 390, 400 (1993) (affirming that the purpose of federal habeas corpus review is

to ensure that individuals are not imprisoned in violation of the Constitution).  *See also Barefoot*

*v. Estelle*, 463 U. S. 880, 887 (1983) ("Federal courts are not forums in which to relitigate state

trials").  Thus, federal habeas review is precluded, as a general proposition, when a state court

has reached its decision on the basis of an adequate and independent state-law ground.  *See*

8

*Coleman v. Thompson*, 501 U. S. 722 (1991).  In *Coleman*, the Supreme Court held that where

> a state prisoner has defaulted his federal claims in state court pursuant to an independent
> and adequate state procedural rule, federal habeas review of the claim is barred unless the
> prisoner can demonstrate cause for the default and actual prejudice as a result of the
> alleged violation of federal law, or demonstrate that failure to consider the claims will
> result in a fundamental miscarriage of justice.

*Id*. at 750.  *See Lynch v. Ficco*, 438 F. 3d 35, 45 (1st Cir.  2006);  *Horton v. Allen,* 370 F. 3d 75,

80 (1st Cir. 2004).  A petitioner's procedural default constitutes an adequate and independent

state ground so long as the state consistently applies the rule and has not waived it.  *Horton v.*

*Allen,* 370 F.3d at 80-81; *Gunter v. Maloney,* 291 F.3d 74,79 (1st Cir. 2002); *Burks v. DuBois*, 55

F.3d at 716; *Puleio v. Vose*, 830 F.2d 1197, 1199 (1st Cir. 1987), *cert. denied*, 485 U. S. 990

(1988).  The jurisdictional nature of the independent and adequate state ground inquiry requires

that it be addressed by this Court at the outset.  *Lambrix v. Singletary*, 520 U. S. 518, 523-24

(1997).

### A.    The Petitioner's Prosecutorial Misconduct Claim (Ground One) Related to the Age of the Sperm Is Procedurally Defaulted.

The petitioner claims that by failing to acknowledge the existence of sperm

evidence, the  prosecution violated his rights.  *See* Petitioner's Memorandum at p. 9.  As

the SJC explained, contrary to his theory at trial, the petitioner, for the first time in

his appeal to the SJC claimed that he and the victim had had consensual sexual

intercourse one or two days prior to her death.  *See* Supp. Ans., Ex. 6, *Commonwealth v.*

*Jewett,* 442 Mass. at 360, 813 N.E.2d at 457.  The petitioner also asserted for the first

time in his appeal to the SJC that the hearsay statements in a police report and two

handwritten police notes prove that the sperm found in the victim's underwear and in her

vagina was twenty-four to thirty-six hours old at the time of her death, and that the

9

prosecutor wrongly deprived the jury of the "material" evidence of the age of the sperm.

*Id*.[2]

Massachusetts has "a long standing rule that issues not raised at trial...are treated as waived..." *Commonwealth v. Curtis*, 417 Mass. 691, 626, 632 N.E.2d 821, 827 (1994).  The rationale behind the waiver doctrine is that a defendant who fails to bring his claim to the attention of the reviewing court at the earliest possible time, waives his right to the court's resolution of that claim.  *See Lykus v. Commonwealth*, 432 Mass. 160, 163, 732 N.E.2d 897, 900 (2000), *quoting Commonwealth v. Pisa*, 384 Mass. 362, 365-366, 425 N.E.2d 290, 293(1981).  Thus, in Massachusetts, appellate review of waived claims is limited to the discretionary standard of whether the claimed transgression created a substantial risk of a miscarriage of justice.  *See Horton v. Allen,* 370 F.3d at 80-81.

The SJC expressly reviewed the petitioner's claim of prosecutorial misconduct "only to determine whether there was a substantial likelihood of a miscarriage of justice at trial." *See* Supp. Ans., Ex. 6, *Commonwealth v. Jewett,* 442 Mass. at 360, 813 N.E.2d at 457.   As the First Circuit has explained, "limited review of this sort 'does not work a waiver of the contemporaneous objection requirement.'" *Lynch v. Ficco*, 438 F.3d at 45, quoting *Horton v. Allen*, 370 F.3d at 81.   Furthermore, after reviewing in the detail the evidence relative to the age of the sperm, the SJC failed to credit the petitioner's allegation that the prosecutor presented false evidence to the jury by creating the "impression that the sperm evidence corroborated his theory

---

[2]   The SJC reasonably determined that the three hearsay statements that the petitioner referred to were inconsistent and ambiguous.  *See* Supp. Ans., Ex. 6, *Commonwealth v. Jewett,* 442 Mass. at 362, 813 N.E.2d at 458.  The SJC also explained that they differ as to the estimate of the age of the sperm, and it is impossible to determine whether any of the notations concerning the time of the sexual intercourse was attributable to McGilvrey or rather was mere speculation of the author.  *Id.*

of the case." *Id*. at 362.  The SJC also noted that it was not the prosecutor's duty to try the

petitioner's case for him by attempting to impeach the Commonwealth's own witness with the

cryptic and inconclusive documents in defense counsel's possessions.  *Id*. at 363.

**B.      The Petitioner's Claim Relative to the Impairment of the Grand
          Jury (Ground Three) Is Also Procedurally Defaulted.**

The petitioner also asserts that the presentation of the false sperm evidence to the grand

jury violated his rights. *See* Petitioner's Memorandum at p. 13.   Specifically, the petitioner

asserts that he was prejudiced by the statement that, when asked by a grand juror about the age of

the sperm recovered from the victim's body, Detective Richard Nagle told the grand juror that his

question would be better answered by the laboratory personnel who conducted the DNA

analysis.  *See* Petitioner's Memorandum at p.14-15.   Here, because the petitioner did not

challenge the indictments prior to trial, he waived his right to challenge them on appeal, and the

SJC only determined whether this claim raised a substantial risk of a miscarriage of justice. [3] *See*

Supp. Ans., Ex. 6, *Commonwealth v. Jewett,* 442 Mass. at 364, 813 N.E.2d at 459.   The SJC

concluded that it did not.  *Id*.  The SJC explained that petitioner provided no evidence, nor did it

discern any, that Detective Nagle wrote any of the three documents  in question, or even knew

---

[3]  It is also worth pointing out that any ruling on the question of whether the indictment
needed to be dismissed based on the testimony presented to the grand jury is a question of state
law, and matters of state law cannot furnish the basis for federal habeas relief.  *See Estelle v.
McGuire*, 502 U.S. at 67-68; *Lewis v. Jeffers*, 497 U.S. at 780. Furthermore, the petitioner seeks
to have this Court create and apply the rule that an error in the course of a state grand jury
proceeding violates the Due Process Clause of the Fourteenth Amendment and necessitates a
habeas petitioner's release, even where there has been an intervening conviction by a jury after a
trial.  However, granting the petitioner a writ of habeas corpus on the basis of an alleged due
process violation arising out of his state grand jury proceedings, despite the fact that he was
convicted by a jury at trial, would create a new rule of law.  Under the holding in *Teague v.
Lane*, 489 U.S. 288 (1989), this Court cannot apply the new rule proposed by the petitioner to the
collateral review of the petitioner's state court conviction.

about them.  Id.  The SJC also set forth that while it was the state chemist and not the DNA testing laboratory who evaluated the age of the sperm, the petitioner produced no evidence that the detective's answer was intended to mislead or deceive the grand jury.

C.    **The Petitioner's Ineffective Assistance of Claim (Ground Two) Fails to Excuse The Procedural Default**

Since the SJC resolved petitioner's prosecutorial misconduct claim and impairment of a grand jury claim on an adequate and independent state law grounds, this habeas court may consider the claims only if the petitioner establishes "cause and prejudice" with respect to the procedural default or demonstrates to this Court his actual innocence.  *See Dretke v. Haley*, 541 U.S. 386, 388 (2004).  The petitioner attempts to show "cause" to excuse the default.  Indeed, petitioner claims that counsel was ineffective for failing to recognize and develop evidence that the sperm in his case was 24 hours older than the Commonwealth's version of the facts would allow.  *See* Petitioner's Memorandum  at p.1 and pp.12-13. To establish cause, the petitioner must demonstrate that some objective factor external to the defense impeded counsel's ability to comply with the state's procedural rule.  *Lynch v. Ficco*, 438 F.3d at 46, quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986).   Furthermore, the First Circuit has held that if a habeas petitioner can meet the prejudice standard needed to establish ineffective assistance under *Strickland*, then the prejudice standard under the "cause and prejudice" showing to excuse a procedural default is also met.  *See Lynch v. Ficco*, 438 F.3d at 49, citing *Prou v. United States*, 199 F.3d 37, 49 (1st Cir. 1999).

In some instances, state defense counsel's ineffectiveness at trial in failing to preserve a claim for review in state court will be enough to establish such cause.  *See Lynch v. Ficco*, 438 F.3d at 46, citing *Murray v. Carrier*, 477 U.S. at 487-488.   However, a federal habeas petitioner

trying to excuse his procedural default by showing ineffectiveness of counsel must first have presented the ineffective assistance to the state court.  *Id.*, citing *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000); *Gunter v. Maloney*, 291 F.3d at 81.  Here, the petitioner did in fact present his ineffective assistance claim to the SJC, who found the claim unpersuasive.  *See* Supp. Ans., Ex. 6, *Commonwealth v. Jewett,* 442 Mass. at 363, 813 N.E.2d at 459.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prevents a federal court from granting an application for a writ of habeas corpus with respect to a claim adjudicated on the merits in state court unless that adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law.  *See Petrillo v. O'Neill,* 428 F.3d 41, 44 (1st Cir. 2005)(quoting *Williams v. Taylor*, 529 U.S. 362, 399, (2000)).  Thus, this Court's focus is upon "whether the state-court decision is 'contrary to, or involved an unreasonable application of, clearly established [Supreme Court  precedent].'" *Correia v. Hall*, 364 F.3d 385, 387 (1st Cir. 2004)(quoting  28 U.S.C. § 2254) (alteration in the original)).

### 1.    The Right to the Effective Assistance of Counsel.

In *Williams v. Taylor*, the Supreme Court held that *Strickland v. Washington*, 466 U.S. 668 (1984), was the clearly established federal law that controlled claims related to ineffective assistance of counsel.  *Williams v. Taylor*, 529 U.S. at 390-391.  Thus, a petitioner alleging ineffective assistance of counsel must establish two elements in state court in order to prevail:

> First, the [petitioner] must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment.  Second, the [petitioner] must show that the deficient performance prejudiced the defense.

*Ouber v. Guarino*, 293 F.3d 19, 25 (1st Cir. 2002), *citing Strickland*, 466 U.S. at 687.

In state court, the petitioner bore the heavy burden of proving ineffective assistance. *Scarpa v. DuBois*, 38 F.3d 1, 8-9 (1st Cir. 1994), *cert. denied*, 513 U.S. 1129 (1995); *Lema v. United States*, 987 F.2d 48, 51 (1st Cir. 1993)(requiring the two-part analysis articulated above). First, "'judicial scrutiny of counsel's performance must be highly deferential.'" *Ouber v. Guarino*, 293 F.3d at 25, *citing Strickland*, 466 U.S. at 689. Furthermore, the reviewing court must not lean too heavily on hindsight: a lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented. *Id., citing Bell v. Cone*, 535 U.S. 685, 696 (2002); *United States v. Natanel*, 938 F.2d 302, 309 (1st Cir. 1991), *cert. denied*, 502 U.S. 1079 (1992). Only if, "in light of all the circumstances, the [alleged] acts or omissions of counsel were outside the wide range of professionally competent assistance," can a finding of deficient performance ensue. *Ouber v. Guarino*, 293 F.3d at 25, *quoting Strickland*, 466 U.S. at 690. Finally, counsel's alleged blunders are not to be "judged solely by the 'surrounding circumstances' of the representation, but, rather, [are to] be judged [by the state court] in light of the whole record, including the facts of the case, the trial transcript, the exhibits, and the applicable substantive law." *Scarpa v. DuBois*, 38 F.3d at 15. *See also Matthews v. Rakiey*, 54 F.3d 908, 911 (1st Cir. 1995).

The petitioner claims that defense counsel's performance was deficient because he failed to see and recognize the importance of the age of the sperm evidence. *See* Petitioner's Memorandum at p. 12. Petitioner does in fact acknowledge that counsel had the information in the police reports. *Id*. In its review of the record, the SJC reasonably rejected the petitioner's ineffective assistance of counsel claim, explaining:

> The [petitioner] claims that his trial counsel was ineffective because he did not cross-examine McGilvrey or the testifying police officers about the statements in the police

14

> report and the notes, or otherwise "investigate" this "potentially dispositive" evidence. Yet, as we have already seen, the police report and the two anonymous notes were anything but dispositive.  Trial counsel does not necessarily provide ineffective assistance by "not prob[ing] every inconsistency," *Commonwealth v. Sylvester*, 35 Mass.App.Ct. 906, 907, 617 N.E.2d 661 (1993), particularly where the alleged inconsistency does not pertain to defense counsel's theory of the case, positional asphyxiation during consensual intercourse.  Given  the implausibility of the petitioner's new theory of the evidence on appeal, this is not an instance where "better work might have accomplished something material for the defense." *Commonwealth v. Satterfield*, 373 Mass. 109, 115, 364 N.E.2d 1260 (1977).  *See  Commonwealth v. Saferian*, 366 Mass. 89, 96, 315 N.E.2d 878 (1974).  The claim of ineffective assistance of counsel is unpersuasive.

*See* Supp. Ans., Ex. 6, *Commonwealth v. Jewett,* 442 Mass. at 363, 813 N.E.2d at 459.  Since the SJC identified and articulated the substance of the *Strickland* standard, and was not presented with facts that were materially indistinguishable from those at issue in *Strickland*,  the "contrary to" portion of the analysis drops from the equation.  *See Williams v. Taylor*, 529 U.S. at 406 ("a run-of-the mill state-court decision applying the correct legal rule from our cases to the facts of the prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").  In other words, *Strickland* and its progeny do not require an outcome "contrary to" that reached by the SJC.

Further, a review of the record demonstrates that the SJC's decision was an objectively reasonable application of *Strickland*.  As the SJC explained earlier in its decision, the petitioner's claim that the documents represented evidence impeaching McGilvrey's testimony is further weakened by the fact that even assuming McGilvrey had told a police officer that the sperm was twenty-four to thirty-six hours old, her estimate was consistent with the theory that the petitioner and the victim had sexual intercourse on the night of the murder.  *See* Supp. Ans., Ex. 6,

*Commonwealth v. Jewett,* 442 Mass. at 362, 813 N.E.2d at 458.[4]  The SJC also pointed out that

no other evidence produced by either party indicated that the petitioner and the victim had had

sexual intercourse prior to her death, nor did defense counsel suggest this at trial.  *Id.*  In fact, the

petitioner's friends testified that the petitioner and the victim were socially acquainted but not

romantically involved prior to the night of the victim's death.  *Id.*  Because the petitioner has

failed to demonstrate that the SJC unreasonably applied *Strickland*, he has also  failed to show

"cause" to excuse the procedural default.  As a result, this court need not reach the merits of

either the prosecutorial misconduct claim or the impairment of the grand jury claim.

## II.    Habeas Relief Is Not Available on Ground Four.

Although petitioner claims that there was a miscarriage of justice caused by various

factors, including the improper admission of expert opinion on sexual assault, lack of proper jury

instruction on accident, and improper admission of the prejudicial statements made by the

petitioner, *see* petitioner's memorandum at p. 2, he does not develop this claim in his

memorandum and it is therefore waived.  *See U.S. v. Zannino*, 895 F.2d 1, 17 (1990)( Issues

alluded to in a perfunctory manner, unaccompanied by some effort at developed argument are

deemed waived).  In any event, these errors were not raised during the trial and the SJC reviewed

the whole case to determine whether there had been any miscarriage of justice in convicting the

petitioner of murder in the first degree.  *See Commonwealth v. Jewett*, 442 Mass. at 366, 813

N.E.2d at 461, *citing Commonwealth v. Marquetty*, 416 Mass. 445, 452, 622 N.E.632 (1993).

---

[4] In footnote 5, the SJC states, " Testimony at trial established that the sperm samples
were extracted by Dr. Wiener more than twenty-one hours after the victim's estimated time of
death, and sent to McGilvrey for analysis some time after that.  McGilvrey testified that she
received the sperm in a condition such that she could "draw no conclusion as to how long [the]
sperm cells [had] been present in the vaginal cavity."

After reviewing the entire record as required by M.G.L. c. 278, § 33E, the SJC declined to exercise its authority to reduce the jury's verdict or order a new trial. *Id*. at 371. This is clearly a state law claim based upon a specific Massachusetts statute. *See* M.G.L. c. 278, § 33E. Errors of state law do not provide a basis for federal habeas corpus relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780, (1990). The petitioner's attempt to relitigate his state court trial cannot serve as the basis for habeas relief.

### III.    Habeas Relief Is Not Available On Grounds Five and Six.

As a matter of Massachusetts appellate procedural law, there exist special provisions for those indicted for, and convicted of, first degree murder. Under M.G. L. ch. 278, § 33E, such a "capital" defendant has a right of direct appeal to the SJC, without the case being first entered on the docket of the Appeals Court. *See Dickerson v. Latessa*, 872 F.2d 1116, 1117-1118 (1st Cir. 1989).[5] The scope of the SJC's review is exceedingly broad under § 33E -- it reviews the "whole case" to determine whether the verdict is against the weight of the evidence, and the court is empowered to order a new trial or to reduce the verdict to a lesser degree of guilt if the interests of justice so require. *See Dickerson v. Latessa*, 872 F.2d at 1118; 32 Nolan & Henry, *Criminal Law*, § 187 (2d ed. 1988 and 1993 Supp.).

After plenary review on direct appeal, a capital defendant may not appeal the decision of the Superior Court denying his motion for a new trial unless the "gatekeeper," *i.e.*, a single justice of the Supreme Judicial Court for Suffolk County, finds that the appeal presents a "new"

---

[5] As noted by the First Circuit, Massachusetts sometimes uses the phrase "capital case" to refer to murder cases, even in circumstances where the sentence imposed is not death. *Lynch v. Ficco*, 438 F.3d at 45, n 9, citing M.G.L. c. 278, § 33E (for purposes of review under §33E, "'a capital case shall mean a case in which the defendant was tried on an indictment for murder in the first degree'"); *Commonwealth v. Anderson*, 445 Mass. 195, 834 N.E.2d 1159, 1172 (2005).

and "substantial" question which ought to be determined by the full court.  *Dickerson v. Latessa*, 872 F.2d at 1118.  In other words, it is the gatekeeper's duty to  "screen[ ] out appeals that lack merit."  *See Commonwealth v. Francis*, 411 Mass. 579, 584, 583 N.E.2d 849 (1992).  The gatekeeper's denial of a defendant's petition for leave to appeal is final and unreviewable. *Commonwealth v. Ambers*, 397 Mass. 705, 710-711, 493 N.E.2d 837 (1986); *Leaster v. Commonwealth*, 385 Mass. 547, 548, 432 N.E.2d 708, 709 (1982).  *See McLaughlin v. Gabriel*, 726 F.2d 7, 9 (1st Cir. 1984).

A gatekeeper justice's determination that a claim of ineffective assistance of counsel is not "new" or "substantial," when denying a petitioner's application for leave to appeal, is a finding by the SJC of procedural default on the part of the petitioner and, as such, is the classic example of an independent and adequate state ground.  *Simpson v. Matesanz*, 175 F. 3d at 207.  Only, if a gatekeeper determines that a claim of ineffective assistance of counsel is "new," but not "substantial," will that decision not constitute a procedural bar to habeas review in certain circumstances.  *See Phoenix v. Matesanz*, 189 F. 3d 20, 25-27 (1st Cir. 1999).

The petitioner's second new trial motion asserted (1) ineffective assistance of appellate counsel for failing to raise an ineffective assistance of counsel claim relative to his failure to object to the expert testimony of sexual assault; and (2) ineffective assistance of appellate counsel for not briefing the impartial juror issue, along with two other claims.  *See* Supp. Ans., Ex. 12, attachment.  Significantly, the single justice rejected the petitioner's application under G.L. c. 278, § 33E for leave to appeal without reaching the merits of the claims.  *See* Supp. Ans., Ex. 13. The single justice specifically denied the application for leave to appeal for the reasons stated in the Commonwealth's opposition.  *Id.*  The Commonwealth asserted that the petitioner

18

failed to present a new and substantial issue for review. *See* Supp. Ans., Ex. 12, p.1. Thus, as in

*Simpson v. Matesanz*, the gatekeeper Justice concluded that the claims were not "new" under

Massachusetts law, which defines "new" as follows:

> An issue is not "new" within the meaning of G.L. 278, §33E, where either it has already
> been addressed, or where it could have been addressed had the defendant properly raised it
> at trial or on direct review.  The statute requires that the defendant present all his claims of
> error at the earliest possible time, and failure to do so precludes relief on all grounds
> generally known and available at the time of trial or appeal.

*Simpson v. Matesanz*, 175 F. 3d at 207 (*quoting Commonwealth v. Ambers*, 397 Mass. 705, 493

N.E. 2d 837, 839 (1986)).  Accordingly, the single justice did not waive the procedural

requirement.[6]   For this reason, both of the petitioner's ineffective assistance of appellate counsel

claims are procedurally defaulted.  *See Simpson v. Matesanz*, 175 F. at 207; *cf. Phoenix v.*

*Matesanz*, 189 F. 3d at 25-27 (1st Cir. 1999).

    As explained above, this habeas court may consider the ineffective assistance of  appellate

counsel claims only if the petitioner establishes "cause and prejudice" with respect to the

procedural default or demonstrates to this Court his actual innocence.  *See Dretke v. Haley*, 541

U.S. 386, 388 (2004).  To establish cause, the petitioner must demonstrate that some objective

factor external to the defense impeded counsel's ability to comply with the state's procedural

rule.  *Lynch v. Ficco*, 438 F.3d at 46, quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Prejudice requires the petitioner to demonstrate "not  merely that the errors at . . . trial created a

possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting

---

[6] The petitioner cannot assert ineffective assistance of counsel as cause for his default
where that claim is itself in procedural default due to the decision of the gatekeeper.  Just as a
petitioner may not rely on an unexhausted claim of ineffective assistance to excuse a default, *see
Murray v. Carrier*, 477 U.S. at 488-489; *Lynch v. Ficco,* 438 F.3d at 46, a procedurally defaulted
ineffective assistance claim also fails to provide an external, independent basis to overcome the
default.  *See Edwards v. Carpenter,* 529 U.S. 446, 450-454 (2000).

his entire trial with error of constitutional dimensions." *Ortiz v. Dubois*, 19 F.3d 708, 714 (1st

Cir. 1994), *quoting United States v. Frady*, 456 U. S. 152, 170 (1982).  The petitioner does not

attempt to show either "cause" and "prejudice" to excuse the default.   Habeas relief should be

denied.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus relief should be denied.

Respectfully submitted,

MARTHA COAKLEY
Attorney General

/s/Eva M. Badway
Eva M. Badway
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts 02108
(617) 727-2200, ext. 2824
Dated: January 16, 2008              BBO # 635431

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically
to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper
copies will be sent to those indicated as non-registered participants on January 16, 2008.

/s/ Eva M. Badway
Eva M. Badway