UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM JEWETT, JR., <br>     Petitioner <br><br> v. <br><br> BERNARD BRADY, <br>     Respondent | ) <br> ) <br> ) <br> ) <br> )  Civil Action No. 05-11849-GAO <br> ) <br> ) <br> ) <br> ) <br> ) |

### PETITIONER'S MOTION FOR DISCOVERY

Petitioner, William Jewett, Jr., moves this Court pursuant to Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts, to allow and provide funds for discovery in the following two related areas:

1)     allow the depositions of Detective Sergeant Richard Craig and State Police Lab Chemist Mary McGilvrey[1]; and

2)     allow funds for petitioner to retain an expert in forensic science to consult regarding the issues regarding the age of sperm herein.

In support whereof, petitioner states that there are two basic charges at issue herein, the alleged rape and murder of Jennifer Mullin. Several of the legal issues presented in his petition revolve around the question of the age of the sperm found in the deceased. Ms. McGilvrey testified at trial that the age of the sperm could not be determined. Tr. Volume 4, pp. 129-130, attached hereto as Exhibit 1. However, prior to trial, Ms. McGilvrey made statements to Detective Sergeant Craig that the sperm's age could be determined, and was approximately 36

---

[1] Ms. McGilvrey testified at trial under her maiden name of Mary Lumley.

hours prior to the time of death.[2]  Supp. Ans., Ex. 4, pp. A30-A31, attached hereto as Exhibit 2.  If the sperm was established to have been 36 hours old at the time of death, the Commonwealth's allegation that the deceased was raped after leaving a party with the petitioner would be completely refuted.

Ms. McGilvrey has never been confronted with or required to explain her pre-trial statements under oath, either at trial or subsequently.[3]  One of the issues in this petition is trial counsel's failure to confront Ms. McGilvrey with her pre-trial statements, due to counsel's stated failure to notice her pre-trial statements in the discovery.  Supp. Ans., Ex. 4, pp. 38-40, 82, attached hereto as Exhibit 5.  Petitioner contends this failure constituted a violation of petitioner's right to counsel, falling below an objective standard of reasonableness and prejudicing petitioner's defense.  In addition, petitioner has never been able to consult an independent expert regarding how closely the age of sperm can be established.

Where this evidence is critically important to determining the truth of the allegations for which petitioner is currently serving a life sentence, the Commonwealth's failure to allow him to develop the evidence was an unconstitutional deprivation of due process, and this Court should

---

[2] Statements may have been made to other officers, as there are two sets of unsigned police notes indicating that the semen was old.  Supplemental Answer Ex. 4, pp. A32-A33, attached hereto as Exhibit 3.  Defendant reserves the right to request discovery regarding these notes if their author(s) can be determined.

[3] The state courts denied petitioner's motion for new trial without a hearing. Supplemental Answer Exhibit 1, relevant portion attached hereto as Exhibit 4.

ensure that a full and fair review of the evidence is conducted. It is in the interests of justice to allow this discovery.

        WILLIAM JEWETT, JR.
        By his attorney,

        /s/ *John H. Cunha Jr.*
        John H. Cunha Jr.
        B.B.O. No. 108580
        CUNHA & HOLCOMB, P.C.
        One State Street, Suite 500
        Boston, MA 02109-3507
        617-523-4300

Dated: March 21, 2008                                             H:\Word\Crim\Jewett\motion for discovery.wpd

## CERTIFICATE OF SERVICE

    I certify that a copy of the foregoing document was served via electronic filing upon AAG Eva M. Badway, Attorney General's Office, One Ashburton Place, Boston, MA 02108-1698.

        /s/ *John H. Cunha Jr.*
        John H. Cunha Jr.

```
                                    Volume:    4
                                    Pages:     172
                                    Exhibits:  see index
```

COMMONWEALTH OF MASSACHUSETTS

BRISTOL, ss.                           SUPERIOR COURT
Indictment No. 99983-84

OCT 3 2003

COMMONWEALTH OF MASSACHUSETTS

vs.

WILLIAM C. JEWETT

BEFORE: Honorable Suzanne DelVecchio

TRIAL TRANSCRIPT

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

JAN 11 2000

APPEARANCES:

   Paul C. Dawley and Frank M. Gaziano, Assistant District Attorneys, Plymouth District, 32 Belmont Street, Brockton, Massachusetts 02403, for the Commonwealth.

   Robert L. Jubinville, Esq., 424 Adams Street, Milton, Massachusetts 02186, for the Defendant.

```
                              Brockton Superior Courthouse
                              Brockton, Massachusetts
                              Thursday, November 19, 1998
```

MARILYN SILVIA
Official Court Reporter

1   prepared by taking that cotton-tipped swab and
2   rubbing it over the microscopic slide. There's
3   no agitation that is going to knock off the
4   tails. A vaginal smear slide could have intact
5   sperm cells if they were present in the vaginal
6   cavity.
7   Q. When you looked at the vaginal smear slide, did
8       you see tails or did you not see tails?
9   A. I did not see any tails on the vaginal smear
10      slide.
11  Q. What can you tell us about the age of sperm cells
12      when you observe a tail?
13  A. On a vaginal smear slide, if I observe sperm
14      cells with tails, then I can draw a conclusion
15      that the sperm cells were deposited more recently
16      as opposed to a longer period of time. I cannot
17      pinpoint an exact time frame that we're talking
18      about. But, as I said, because the tails are the
19      first thing to be degraded in the vaginal cavity,
20      if you see tails, you know it's more recent than
21      if you don't see tails.
22  Q. If you don't see tails what can you say about the
23      age of the sperm cells?
24  A. If I don't see tails on a vaginal smear slide, I
25      can really draw no conclusion as to how long

1   those sperm cells have been present in the
2   vaginal cavity. Except we do know that sperm
3   cells will only remain present in the vaginal
4   cavity for several days. It could be three days,
5   four days, it could be seven days. But they will
6   also be there immediately after the incident as
7   well, but I can draw no real conclusion about the
8   time frame.
9   Q. What was item 2B?
10  A. 2B are the tan pantyhose that were recovered from
11     Jennifer Mullin.
12  Q. Let me show you another bag with some markings on
13     it. Would you identify this item.
14  A. This item has the markings that I wrote on the
15     bag and on the pantyhose indicating the lab
16     number, the item number, my initials and the
17     description of the garment.
18  Q. Did you notice any damage to the pantyhose?
19  A. Yes, I did.
20  Q. What did you notice?
21  A. One leg of the pantyhose was completely torn away
22     from the other leg of the pantyhose. So when I
23     received this item, it was actually in two
24     pieces, one leg, and then the rest of the
25     pantyhose.

HOMICIDE INVESTIGATION
Rockland Police Department
Report Number 02-33-01
Supplement by Det. Sgt. Richard Craig
05 Feb 93  Friday

11:20am  Received call from CPT Rumble, Weymouth PD. He has gotten a call from Kelly Johnston, Hingham. She stated to me that on the morning of 30 JAN 93, at about 6:30 - 6:45am, she got up like she does every Saturday morning, and drove to Weymouth to buy donuts. She said that just after the Weymouth line, as she headed north, she observed a black boot in the middle, on the center line, of High Street. She said that she is reporting this now, as she has just learned more about the "missing" boot from reading the paper.

Her information is:

Kelley Johnston
103 HIgh Street
Hingham, Mass.
740-4369

11:05am  Spoke to Off. McCracken, Hingham Police Department. He said they had recently removed guns from the home of a party named

ROBERT W. MROZ
15 Spruce St.
Hingham, Mass.
DOB: 06/04/59

He said this party had recently beaten up his girlfriend, and when he came to reclaim guns which had been taken away from him when she obtained a 209A, he took McCracken aside and stated he'd been a neighbor once of the ▊▊▊▊ family, and wasn't it ashame about ▊▊▊▊?

McCracken thinks Mroz is kind of strange, and thought that the situation was strange. He watched Mroz leave the station parking lot (It was about 9:00pm ) and noted that the car looked like an older, "boxie" looking car, and appeared to be light blue.

11:10am  I spoke with

CHERYL SACHETTI
WEYMOUTH HIGH SCHOOL EMPLOYEE
340-2580

Last night, Trp. Berna had advised me that he'd learned from the State Police Laboratory that while the post mortem did not reveal that she'd been raped, it did reveal that she'd had sex approximately 36 hours or so before death, because



▮HOMICIDE INVESTIGATION
Rockland Police Department
Report Number 02-33-01
Supplement by Det. Sgt. Richard Craig
05 Feb 93  Friday

a2



there were small amounts of sperm deep inside her vagina. The lab also confirmed small deposits of "old" sperm on her panties, which indicated she had changed her panties some time after her sexual encounter. The lack of sperm, etc., on her body would be consistent with her having showered, as had been reported to us earlier.

I was contacting the school to determine Jen Mullins' attendance records, in order to help ascertain when she could have had the opportunity to have had sex prior to her murder, and possibly with whom.

On the phone,

10:20ᴬ Checked around 94 High St. (Sasso's) where book for
(183·J&C / Parked in yard).

✱ 10:34ᴬ Mary Lumley — Semen — (nite before, i.e.,
OLD man here had sex Th — Or' Fri. afternoon).
CURTIS: ?

10:40 Gave (SB) map of area.

10:45 (SB) Paula L — to ✓ on ▓▓▓ activities
Th.

10:45 396-AFL @ 136 Pond St
(Did murder scene to Boot via
ward etc)

11:00ᴬ Rte. 228 to Wey to Sheap to Roip G
Talbott up to 'Columbran Sq.

[sketch map with labels: Hollis, POND, Christian Apts, ST, Twin City, Walgreen, Pleasant Plaza, Videosonics 331-1400]

11:30 CPT. RUMBLE.
11:40 To Quincy — Fenrell St. (St. Am. Ch to
Willeston Beb) — 55 Fenrell L — They might
be related to friend of Mum

I

WEYMOUTH TAXI CO'S.

① GREEN TAXI - 335-1935    AROUND
   DARREL PHILLIPS - NO    2/10/93      *
   EARLY NM FOR AREA O.

② TOWN TAXI 337-5662
   LARRY BOWEN

---

OFF. MIKE MILLIGAN - WPD
59 SWAN AVE.

FM Chemist Mary Lumley - sexual contact    *
w/victim was approx. 24-30 hrs. prior to
death (not less than 24 hr.) Blood typing
of the semen sample is NOT possible due
to size and lack of certain chemical
properties - to attempt such a test would
result in destruction of the sample. It
is however, DNA viable should we want
to do that.

---

Atty. Bill Brown
1109 Rte 53 (across fm Flower Shop)
Weymouth
Represents Jen Mullin's family

2/19/93  Spent the day doing walk fm Turner Rd.
scene to Jewett house. Neg. results.
BERNA
KELLIHER
CRAIG
GLASHEEN

| COMMONWEALTH | | VS. | William C. Jewett Jr. Weymouth | |
|---|---|---|---|---|
| OFFENSE | PLACE | | PRESIDING JUSTICE | COURT REPORTER |
| Murder | Rockland | | | |

| COUNSEL FOR COMMONWEALTH | COUNSEL FOR DEFENDANT |
|---|---|
| Frank Gaziano, ADA Paul Dawley, ADA | Marnold Tajrin, Boston Robert Jubinville, Milton R. Goldman, Granby CPCS |

### DOCKET ENTRIES

| DATE | NO. | |
|---|---|---|
| 1997 | | |
| October 6 | 1 | REturned into court and ordered filed. |
| | 2 | Motion of the Commonwealth requesting warrant on indictment filed and allowed |
| | 3 | Warrant on indictment (Tierney, J.) |
| October 7 | 4 | Warrant recalled |
| | 5 | Appearance of Gaziano/Dawley for the commonwealth |
| | 6 | Appearance of Tajrin for the defendant |
| | | Pleads Not Guilty |
| | | Ordered held without bail |
| | 7 | Special mittimus on indictment issued |
| | | Case continued to October 27,1997 for pre-trial conference (Doerfer,J.) K. Lindelof, court reporter |
| | | Special mittimus returned with service |
| October 7 | 8 | Attorney Tagrin's motion to withdraw |
| October 20 | 9 | Appearance of Robert Jubinville for the defendant |
| October 31 | 10 | Pre-trial conference report filed |

# COMMONWEALTH VS. WILLIAM C. JEWETT JR.

| DATE | NO. | DOCKET ENTRIES |
|---|---|---|
| 2003 July 23 | | Initial Order upon deft's motion for a new trial (see 99983) |
| Agusut 4 | | Deft's motion for one week extension to comply with order dated July 23,2003 filed and is herby allowed |
| August 4 | | Time to comply is extended one week (Giles,J.) |
| September18 | | Response of Compliance with Courts order of July 23, 2003 (Giles,J.) |
| October 6 | | Deft's motion for new trial denied without hearing(see Memorandum of Decision(see 99983) |
| October 8 | | Memorandum of Decision and Order upon deft's motion for new trial(see 99983) (Giles,J.) |
| October 27 | | Defendant's notice of appeal from denial of motion for new trial filed (see 99983) |
| 2004 September 13 | | Notice to Justice, DA and Defense counsel of defendant's notice of appeal from denial of motion for a new trial(see 99983) |
| September 16 | | Record on appeal transmitted to the appeals court(see 99983) |
| | | Notice to DA and Defense counsel that record on appeals has been transmitted to the SJC |
| | | ORDER(SJC): The petition for rehearing filed in the above captioned case has been considered by the court and is denied, entered September 10, 2004 |
| | | ORDER(SJC): For the reasons outlined in the opinion we affirm the convictions of murder in the first degree and rape and the order denying the defendant's motion for a new trial, entered Aug. 12, 2004 |
| 2005 March 14 | | Commonwealth's notice that evidence (personal property of the decedent) will be returned to the decedent's family.(see 99983) |
| April 8 | | Attorney Jacobson's motion to withdraw as counsel for the defendant (see 99983) |
| April 20 | | Attorney Jacobson's motion to withdraw as counsel for the defendant is allowed (DelVecchio J.) |

## AFFIDAVIT OF MYLES JACOBSON

I, Myles Jacobson, with offices at 90 Conz St., Northampton, MA, hereby depose and say:

1. I am an attorney appointed by CPCS to represent Appellant William Jewett for purposes of post-conviction relief in Commonwealth v. William Jewett, SJC 08285. My responsibilities in this regard include a certain amount of fact investigation which, because appellants have no right to funds for an investigator, sometimes need to be undertaken by the attorney or not at all.

2. In this case, my fact investigations included the following:

(a) On April 14, 2003, I spoke in person with Mark Obershaw who was then in custody at the Northern State Correctional Facility in Newport, Vermont. Mr. Obershaw informed me that his testimony against Jewett at his murder trial had followed an understanding reached with Massachusetts police officers. That understanding was twofold: (1) Obershaw did not need to worry that he would be convicted of first degree murder on the charge of first degree murder then pending against him; and (2) any sentence Obershaw might receive could be served in a prison outside Massachusetts. Mr. Obershaw was unwilling to sign an affidavit to this effect, but he advised me that what he was telling me was corroborated by remarks made at his motion to suppress hearing.

(b) On November 20 and 24, 2002, I spoke by telephone to a person who identified herself as Mrs. Kim Quam of 65 Colby Rd., Rockland, MA. Mrs. Quam said she was Gary Quam's mother. Gary Quam had testified before the grand jury in Jewett's case, but not at trial. Because the trial transcript shows that Gary Quam had recanted his testimony and was therefore not being called as a government witness, I had called to inquire why he had recanted. Mrs.

Quam told me that her son had been pressured by the police (or words to that effect) to say more against Jewett than he knew. Although after his contact with the police he agreed to testify at the grand jury, according to his mother, he was uncomfortable with his testimony and informed the government that he did not want to testify at trial. I was unable to communicate directly with Gary Quam. Also, I was unable to reach Mrs. Quam again to ask for an affidavit.

3. On April 9, 2002, I had a telephone conversation with Attorney Robert Jubinville, trial counsel for Mr. Jewett. On April 10, 2002, I followed up with a letter to Mr. Jubinville, which is attached to this affidavit. I believe the representation made in the letter to be true, and I received no response from Mr. Jubinville suggesting otherwise.

The foregoing is true to the best of my information and belief.

Signed under the penalties of perjury, May 20, 2003, Northampton, MA.

_____
Myles Jacobson

<div style="text-align:center">

**MYLES JACOBSON, ATTY.**

90 CONZ STREET
P.O. BOX 1389
NORTHAMPTON, MA 01061

---

(413) 582-1800

</div>

April 10, 2002

By Fax 617-698-8004 and Mail
Robert L. Jubinville, Esq.
487 Adams St.
Milton, MA 02186

Re: <u>Commonwealth v. William C. Jewett</u> No. 99983-84

Dear Mr. Jubinville:

 Thanks for the conversation yesterday regarding Mr. Jewett's case. This is to follow up with a few issues relating to a police report apparently provided in discovery: pg 7.1 and 7.2 of Det. Sgt. Craig's report of Feb. 5, 1993. See enclosed.

 (1) At the bottom of pg. 7.1 and the top of pg. 7.2, please note that reference is made to the post mortem revealing that the sperm in the victim's vagina and panties was "old," i.e., not consistent with having been deposited on the day of her death. When we spoke yesterday, I believe you told me that you did not recollect this information and had not followed up on that issue in the course of trial preparation. I assume that I understood you correctly, but if not, please let me know.

 (2) Concerning the age of the sperm, if you have seen a relevant chemist or other report or if you have any relevant information, please let me know.

 (3) Finally, you will note that the report on pg. 7.2 ends in mid-sentence. If you have seen or know anything about a more complete copy, please let me know.

 As you know, I am trying to evaluate these issues for a possible motion for a new trial. Any further information you have will be appreciated.

<div style="margin-left:50%">
Very truly yours,

*Myles Jacobson*

Myles Jacobson
</div>

enc.:

COMMONWEALTH OF MASSACHUSETTS
SUPREME JUDICIAL COURT

SJC--08253

COMMONWEALTH,
Appellee

v.

WILLIAM JEWETT,
Appellant

## SWORN STATEMENT OF MICHAEL J. FELLOWS

I, Michael J. Fellows of 64 Kensington Ave., Northampton, MA, state as follows:

1. I have been employed as a legal clerk for Myles Jacobson since February, 2002.

2. On or about April 9 or 10 of 2002, I participated in a telephone interview of Attorney Robert Jubinville with Attorney Jubinville's knowledge and consent.

3. During that conversation, Attorney Jubinville was asked whether he remembered evidence in the police files from the investigation of the murder of ▅▅▅▅ suggesting that the sperm found in and on ▅▅▅▅ body was old at the time of her death.

4. Attorney Jubinville responded that he did not recall ever having seen that information, nor did he have any memory of the issue.

The above statements are known to me personally and are true to the best of my knowledge and belief.

Signed, under the pains and penalties of perjury, on April 30, 2003.

_____
Michael J. Fellows